

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00200-CV

Martin **REYNA**,
Appellant

v.

**M&J CARRIERS, LLC** and EBG Logistics, LLC,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2024CVA000210D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Lori Massey Brissette, Justice
                 Velia J. Meza, Justice

Delivered and Filed: October 29, 2025

AFFIRMED

Appellant Martin Reyna appeals the trial court's grant of summary judgment to appellees M&J Carriers, LLC and EBG Logistics, LLC. Appellant Reyna questions whether we have jurisdiction to consider the appeal and argues that, if we do, our jurisdiction is limited to his vicarious liability claims. Because the trial court entered a final, appealable judgment on all claims asserted by Reyna against M&J and EBG, we conclude we have jurisdiction and affirm.

## BACKGROUND

Martin Reyna, who was driving a Freightliner Columbia tractor hauling a trailer, was rear-ended by Armando Riojas, Jr., who was also driving a tractor and hauling a trailer, in Webb County, Texas near a U.S. Border Patrol checkpoint. Reyna sustained personal injuries from the collision. Riojas was employed by Roberto Garza Jr.'s company, Garza's Speed, LLC, and Garza owned the tractor driven by Riojas.[1] The trailer being hauled by Riojas was leased by M&J from Xtra Lease, L.L.C.—a motor carrier.[2] The leased trailer contained a load brokered by EBG, a company also owned by the owners of M&J.[3]

Reyna sued M&J and EBG seeking to invoke the doctrine of respondeat superior, with respect to Riojas' negligence, and making direct claims against both companies for: (1) negligent hiring; (2) negligent training; (3) negligent supervision; (4) negligent retention; (5) negligent entrustment; (6) the negligent furnishing of a tractor to Riojas which was not suitable or safe for public roadways; and (7) gross negligence.[4] M&J and EBG moved for summary judgment seeking dismissal of Reyna's claims against them, supplementing their motion a month later. The trial court granted the motion, but before a written order could be entered, Reyna moved for reconsideration. The trial court denied reconsideration and severed Reyna's causes of action against M&J and EBG, directing the clerk to create a separate cause. The trial court then granted M&J and EBG's "supplemental" motion for summary judgment in the severed cause. Reyna then filed this notice of appeal in the severed cause.

---

[1] Riojas, Garza, and Garza's Speed were defendants in the trial court but are not parties to this appeal.

[2] A motor carrier uses commercial motor vehicles to transport goods.

[3] EBG's duty as broker was to locate a carrier.

[4] All references are to Reyna's fourth amended petition.

**JURISDICTION**

Because of the sequence of the orders in this case, and because Reyna stated in his brief he did not believe the trial court's summary judgment order was appealable,[5] we must first determine whether we have jurisdiction. *See, e.g.*, *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam); *Adams v. Harris Cnty.*, No. 04-15-00287-CV, 2015 WL 8392426, at *2 (Tex. App.— San Antonio Dec. 9, 2015, pet. denied) (mem. op.). To do so, we consider which order is being appealed and, if there is more than one, whether they together or separately comprise a final judgment.

## A. Summary Judgment and Severance

M&J and EBG originally moved for summary judgment seeking dismissal of all of Reyna's claims against them, arguing Reyna had no evidence to support any of his claims. A month later, they filed a supplemental motion for summary judgment to attach additional evidence, specifically, the deposition of Riojas. But, the supplemental motion, as well, addressed both vicarious and direct liability of M&J and EBG.

After the hearing, the trial court granted the summary judgment motion, explaining M&J and EBG were not liable under respondeat superior. Shortly thereafter, Reyna's counsel agreed with counsel for Garza's Speed that the trial court's ruling eliminated both M&J and EBG from this suit entirely.

Before the trial court issued a written order, Reyna moved for reconsideration of the trial court's ruling, explaining it was challenging the trial court's "grant[ing] of the motion," arguing the evidence supported M&J and EBG's direct negligence. The trial court denied reconsideration.

---

[5] Reyna contends that he "perfected this appeal" solely "to prevent any argument that [he] waived his right to appeal" the supplemental summary judgment motion. He further contends that since the direct liability claims against M&J and EBG have never been adjudicated, we should remand to the trial court to address them.

The trial court then severed Reyna's causes of action against M&J and EBG and directed the trial court to docket them in a separate cause. The court's order provided it "intend[ed] for the order granting summary judgment [for M&J and EBG] to dispose of all issues related to those Defendants" and the summary judgment order was "final and appealable upon the signing of this Order." The trial court then granted M&J and EBG's "supplemental" motion for summary judgment in the severed cause.

## B. Our April 2025 Order

On April 8, 2025, we invited the parties to amend their briefs to explain: (1) which order(s) are being appealed and whether this court has jurisdiction to consider same; and (2) assuming this court has jurisdiction over all claims by Reyna against M&J and EBG, the merits of the trial court's orders as to *all claims and parties* to this appeal. Reyna amended his brief to address only the first matter. He chose to maintain his position that the severance order "did not make any order final and appealable" and the "supplemental" summary judgment order "only addressed the vicarious liability claims." Therefore, "Reyna's direct liability claims remained unadjudicated after the severance." *Id.* M&J and EBG, on the other hand, both argue the severance order effectuated a final appealable judgment.

## C. A Final Appealable Order

Trial courts may "express [their] intent to render a final judgment by describing [their] action[s] as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Patel v.*

*Nations Renovations, LLC*, 661 S.W.3d 151, 155 (Tex. 2023).[6] The Texas Supreme Court has "also recognized that, '[a]s a rule, the severance of an interlocutory judgment into a separate cause makes it final.'" *Sealy Emergency Room, L.L.C.*, 685 S.W.3d at 820 (quoting *Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*, 63 S.W.3d 795, 795 (Tex. 2001)).

Here, while the trial court orally granted summary judgment on all claims, the trial court did not initially appear to issue a written order on its summary judgment ruling. But the court later issued an order (1) severing all of Reyna's claims against M&J and EBG in a new cause and (2) providing, in pertinent part, (a) it intended "for the order granting summary judgment [for M&J and EBG] to dispose of all issues related to those Defendants" and (b) the summary judgment order was "final and appealable upon the signing of this Order." This plainly meets the requirements for a final judgment dismissing all of Reyna's claims against M&J and EBG on summary judgment. *See Patel*, 661 S.W.3d at 155; *Elizondo*, 544 S.W.3d at 827; *Lehmann*, 39 S.W.3d at 200; *Sealy Emergency Room, L.L.C.*, 685 S.W.3d at 820.

But what do we make of the February 21, 2024 order granting "supplemental" summary judgment in the severed cause? Rule 329b of the Texas Rules of Civil Procedure provides that "regardless of whether an appeal has been perfected," a trial court "has plenary power to . . . vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed." TEX R. CIV. P. 329b(d). Here, the order granting the supplemental motion for summary

---

[6] *See also Sealy Emergency Room, L.L.C. v. Free Standing Emergency Room Managers of Am., L.L.C.*, 685 S.W.3d 816, 820 (Tex. 2024) ("There are two paths for an order to become a final judgment without a trial: the order can (1) dispose of all remaining parties and claims then before the court, regardless of its language; or (2) include unequivocal finality language that expressly disposes of all claims and parties."); *In re Elizondo*, 544 S.W.3d 824, 827–28 (Tex. 2018) (per curiam) (providing if judgment clearly and unequivocally states it finally disposes of all claims and parties, assessment is resolved in favor of finding finality, and reviewing court *cannot* review record, explaining test in *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) holds that an order is final if it 'states' that it is—not if the court intends it to be" (quoting *Lehmann*, 39 S.W.3d at 205)). *See generally Lehmann*, 39 S.W.3d at 200 ("The intent to finally dispose of the case must be unequivocally expressed in the words of the order itself. But if that intent is clear from the order, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment.").

judgment was entered just under thirty days after the court issued its final appealable order. Notably, the supplemental motion addressed both direct and vicarious liability claims, just as the initial motion did, but simply sought to have additional evidence and argument considered.

"Just as with an unambiguous contract, we enforce unambiguous orders literally." *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011). "An order is unambiguous if it is worded so that it can be given a certain or definite meaning." *In re Schlumberger Tech. Corp.*, No. 11-19-00204-CV, 2019 WL 5617632, at *5 (Tex. App.—Eastland Oct. 24, 2019, no pet.) (mem. op.) (citing *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763–64 (Tex. 2018)). Because the trial court was unambiguous in its order stating that summary judgment as to all claims against these M&J and EBG would become a final, appealable order upon severance, and because we may construe the order as to the supplemental motion as a Rule 329b(d) order, we recognize our jurisdiction over the trial court's final, appealable order as to all claims against M&J and EBG. *See Lehmann*, 39 S.W.3d at 200.

### D. Timeliness of Appeal

M&J argues the case should be dismissed because the notice of appeal was untimely—as it was filed more than thirty days after the order granting severance and recognizing the granting of summary judgment. But if the later order granting the supplemental motion for summary judgment was a part of the final judgment, and we believe it is, under Rule 329b(d), it rendered the notice of appeal—filed less than thirty days later on March 21, 2024 —timely. *See* TEX. R. APP. P. 26.1 ("The notice of appeal must be filed within 30 days after the judgment is signed.").

Even if we assumed, for the sake of argument, the "supplemental" order was a nullity and of no force or effect because it was duplicative of the original final judgment, and M&J does not identify how that would be the case, the notice of appeal would still be timely. Reyna filed a

premature motion for reconsideration of the order granting summary judgment. We construe such a motion as a motion for new trial. *See, e.g.*, *Mengel v. State*, No. 13-02-618-CV, 2004 WL 1932751, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2004, no pet.) (mem. op.); *see also In re Gonzalez*, No. 04-18-00170-CR, 2018 WL 1610916, at *1 (Tex. App.—San Antonio Apr. 4, 2018, no pet.) (mem. op.) (orig. proceeding); *Powell v. Girly Girl, L.P.*, No. 01-14-00654-CV, 2015 WL 1061095, at *1 (Tex. App.—Houston [1st Dist.] Mar. 10, 2015, no pet.) (mem. op.). Rule 306c of the Texas Rules of Civil Procedure provides no motion for new trial will "be held ineffective because prematurely filed; but every such motion shall be deemed to have been filed on the date of but subsequent to the time of signing of the judgment the motion assails." TEX. R. CIV. P. 306c; *see Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 665 (Tex. 2011). Accordingly, as a new trial motion, the motion for reconsideration was deemed filed as of the original final judgment, and the deadline for filing the notice of appeal was extended ninety days from that date. *See* TEX. R. APP. P. 26.1(a)(1) (providing "notice of appeal must be filed within 90 days after the judgment is signed if any party timely files: (1) a motion for new trial"). Because the notice of appeal was filed within that ninety days, it was timely filed.

Because we hold that we do have jurisdiction over a final and appealable order granting summary judgment as to all claims by Reyna against M&J and EBG, we turn to the merits of that judgment.

### SUMMARY JUDGMENT ON VICARIOUS LIABILITY

Reyna argues the trial court should have denied M&J and EBG's summary judgment motion because he raised material fact issues concerning their vicarious liability by demonstrating they exercised both contractual and actual control over Riojas and the tractor. We disagree.

### A. Standard of Review and Applicable Law

We review a trial court's order granting summary judgment de novo. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). "To be entitled to traditional summary judgment, the movant has the burden to prove that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law." *Id.*; *see* TEX. R. CIV. P. 166a(c). A movant "is entitled to summary judgment if it conclusively negates at least one element of the plaintiff's claim." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018). In evaluating whether the movant has carried their burden, we take "as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor." *JLB Builders, L.L.C.*, 622 S.W.3d at 864. "If the movant meets that burden, the burden shifts to the nonmovant to present evidence raising a fact issue, but the burden does not shift if the movant does not satisfy its initial burden." *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 583 (Tex. 2023).

"Under the common-law doctrine of respondeat superior, or vicarious liability, 'liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them.'" *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018) (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002)). It "constitutes an exception to the general rule that a person has no duty to control another's conduct." *Id.* Typically, it arises in an employer and employee context, whereby "an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 565 (Tex. 2016) (quoting *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)).

But it may also arise in the context of a party employing an independent contractor. *See generally Painter*, 561 S.W.3d at 133 (providing Supreme Court has recognized potential for such

vicarious liability where party employing independent contractor retains some control over manner in which independent contractor performs work that causes damage but explaining control over independent contractor's conduct for vicarious liability purposes is necessarily subject to task-specific, control analysis).

The parties appear to agree that Riojas was employed by Garza's Speed, but dispute whether he was also in service of M&J and EBG for vicarious liability purposes, with M&J and EBG contending that Garza's Speed was an independent contractor of M&J. A party "who employs an independent contractor has no duty to ensure that the contractor safely performs its work." *JLB Builders, L.L.C.*, 622 S.W.3d at 864–65. "However, an exception to this rule arises when 'the [party using the independent contract] retains some control over the manner in which the contractor performs the work that causes the damage.'" *Id.* at 865 (quoting *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020)). "Control can be established in two ways: by (1) a contractual right of control or (2) an exercise of actual control." *Gator Gone Safety Pilots v. Holt*, 622 S.W.3d 524, 543 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Painter*, 561 S.W.3d at 141; *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)).[7] "In either case, the 'control must relate to the condition or activity that caused the injury.'" *JLB Builders, L.L.C.*, 622 S.W.3d at 865 (quoting *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997)); *see, e.g.*, *Dow Chem. Co.*, 89 S.W.3d at 606. "Further, the control retained or exercised by the [party using the independent contractor] must extend to the means, methods, or details of the independent contractor's work." *JLB Builders, L.L.C.*, 622 S.W.3d at 865 (quoting *Arredondo*, 612 S.W.3d at 295).

---

[7] *See generally Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 847 (Tex. App.—Fort Worth 2006, no pet.) (identifying control as linchpin of any vicarious liability-based claim).

**B. Analysis**

Reyna identified Riojas's actions in causing his injury as failing to: (1) keep a proper lookout that a person of ordinary prudence would have maintained under same or similar circumstances; (2) timely apply the brakes of the tractor in order to avoid the collision; (3) control his speed and drive the vehicle at a rate of speed which was not greater than that which an ordinary person would have driven under the same or similar circumstances; (4) turn the vehicle in an effort to avoid the collision in question; (5) stop properly; and (6) yield the right of way to Reyna. Put simply, Reyna identified Riojas's actions in causing his injury as Riojas negligently operating the tractor when he crashed it into Reyna's tractor.

**C. Analysis**

**1. The Evidence**

M&J and EBG moved for summary judgment, arguing, among other things, they exercised no contractual or actual control over Riojas or the tractor or the trailer at the time of the accident. They included as evidence an affidavit of Roxana Tello—an M&J and EBG officer—who stated Riojas "was not an employee, agent, or servant of M&J or of EBG at any time," and "the tractor being operated by [] Riojas[] at the time of the accident made the basis of this lawsuit was not owned by or under the control of M&J or EBG, and neither M&J nor EBG supplied or entrusted that tractor to [] Riojas[] at any time." They further contended their only possible link to the case was contractual through the trailer, not the tractor, because M&J leased the trailer involved and EBG brokered the load. However, the trailer interchange agreement, which they included as evidence, showed they exercised no contractual control over the trailer, much less the tractor or Riojas. The agreement provided, in pertinent part, Garza's Speed had "complete control and supervision of" the trailer. They also included a copy of the crash report which provided that the

accident was caused by Riojas's failure to control his speed and further provided the owner of the tractor driven by Riojas was the owner of Garza's Speed—Roberto Garza Jr. Based on this evidence, M&J and EBG carried their burden to show no control over Riojas's actions in causing the accident and they were entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *JLB Builders, L.L.C.*, 622 S.W.3d at 864.

In opposition to the motion, Reyna was required to present evidence raising a fact issue. *See Wal-Mart Stores, Inc.*, 663 S.W.3d at 583. Reyna introduced as evidence the testimony of William E. Hampton—his expert witness. Hampton testified Garza's Speed and Riojas were acting under the direction and control of M&J, EBG, and Garza's Speed with respect to the trailer and cargo Riojas was hauling and its destination.[8] He also testified M&J was listed as the "carrier" on Nortek's bill of lading for the cargo in the trailer.[9]

A few weeks after Reyna filed the foregoing response, M&J and EBG filed their "supplement" to the motion for summary judgment because, after they filed their initial motion, they were able to depose Riojas. In it, they argued Riojas's deposition supported their contention that they exercised no actual or constructive control over any of the individuals or vehicles involved in the collision and that no act or omission on their part could have caused or contributed to the accident. Riojas testified he was employed by Garza's Speed not M&J or EBG, and the tractor was having mechanical issues and testified the malfunctioning of the tractor was approximately eighty percent of the cause of the accident, with him being responsible for the other twenty percent. He testified he raised the mechanical problems with Garza. Riojas testified he

---

[8] Hampton conceded he was unaware of any evidence Riojas had any direct contact with anyone at M&J except maybe a phone call, but he was not sure if any phone calls would have gone through Garza's Speed. He further testified Riojas was operating the tractor under the "authority" of Garza's Speed, pulling the trailer with cargo "under M&J's authority," and the cargo was brokered by EBG.

[9] Hampton's report, offered in opposition to the motion, provided the same.

knew the tractor was not working when he picked up the load from M&J and hooked up the trailer to his tractor there on his own, at Garza's direction.

Reyna filed an amended response in opposition to the summary judgment motion, arguing: (1) Riojas was the employee of M&J, EBG and Garza's Speed for the load he was hauling, (2) M&J and EBG negligently entrusted "their vehicle"—the trailer—being hauled by Riojas, (3) M&J and EBG had control over "Riojas and the trailer" he was pulling at the time of the accident, and (4) M&J, at the same time, transferred control of the trailer to Garza's Speed.

He argued M&J directed Riojas, as Garza's Speed's driver, to pick up the trailer from M&J and EBG at an EBG yard. He further contended another party that leased the trailer to M&J (who leased it to Garza's Speed), had exclusive control over the trailer. He also contended the packing slip and the bill of lading showed Riojas was hauling the load for M&J as carrier, not Garza's Speed. They further pointed to evidence showing the trailer having M&J's logo on its signage. In short, Reyna contends that because Riojas was hauling a trailer for M&J brokered by EBG, he was under their control, in addition to Garza's Speed. Reyna further contended there was a genuine issue of material fact as to whether M&J ever relinquished control over the trailer pursuant to the interchange agreement when it transferred control of the trailer to Garza's Speed without obtaining its own lessor's consent to do so in the equipment lease between XTRA and M&J.

Reyna supported his opposition to the motion with, among other things: (1) the deposition of Sandra Falcon—an executive manager of M&J, (2) Hampton's report and deposition, (3) an equipment lease agreement and addendum, (4) the trailer interchange agreement, (5) Riojas's deposition, (6) Garza's deposition, (7) the packing slip & bill of lading, and (8) photos of the trailer.

In her deposition, Falcon testified EBG, as broker, selected Garza's Speed for the shipment. She further testified M&J was permitted, under its lease with XTRA, to sublease to another carrier like Garza's Speed and believed it did so but was not fully certain.[10] She testified there was no contractual, business, or employment relationship between Riojas and M&J, and the only contractual relationship between M&J and Garza's Speed was the trailer interchange agreement. She also testified Riojas was under the dispatch and authority of Garza's Speed and not M&J the day of the collision. She had never spoken to Reyna, Riojas, or Garza. Garza testified that Riojas was employed by Garza's Speed. He also testified Garza's Speed used its tractor to deliver third-party trailers loaded with goods.[11] The packing slip and bill of lading listed M&J as a carrier.

### 2. Discussion

Here, none of the evidence above demonstrates how M&J or EBG controlled how Riojas operated the tractor, which the evidence shows was controlled by Riojas as an employee of Garza's Speed. *See JLB Builders, L.L.C.*, 622 S.W.3d at 865; *Clayton W. Williams, Jr., Inc.*, 952 S.W.2d at 528. Reyna attempts to raise a fact issue by pointing to the evidence of M&J's contractual right to control the destination of the trailer and cargo. *See Wal-Mart Stores, Inc.*, 663 S.W.3d at 583. But even as we credit such evidence and indulge every reasonable inference in its favor, as we must, it is not more than a scintilla of evidence creating a genuine issue of material fact because it hardly establishes M&J had any right to control Riojas's operation of the tractor. *See JLB Builders, L.L.C.*, 622 S.W.3d at 864; *Wal-Mart Stores, Inc.*, 663 S.W.3d at 576. And no evidence was offered establishing anything approaching even contractual control for EBG.

---

[10] XTRA's interrogatory responses explain M&J had exclusive control over the trailer via its lease from XTRA.

[11] Garza largely had no recollection whatsoever of any of the matters related to the incident and his business, explaining that the collision ended his business.

Nor was there otherwise any evidence of actual control. *See Painter*, 561 S.W.3d at 141; *Gator Gone Safety Pilots*, 622 S.W.3d at 543; *Dow Chem. Co.*, 89 S.W.3d at 606.[12] Reyna points to the fact that M&J and EBG investigated the crash as part of their insurance claims. But a post-accident investigation, by itself fails to show how either M&J or EBG exercised any actual control over Riojas and the tractor at the time Riojas drove his mechanically malfunctioning tractor into Reyna's tractor.

Accordingly, we cannot conclude the trial court erred when it granted M&J and EBG summary judgment on the vicarious liability claims. Because Reyna does not address or in any way challenge the trial court's granting of summary judgment as to claims of direct negligence against M&J and EBG, we need not address those claims here, but will simply affirm that ruling. *See* TEX. R. APP. P. 38.1(f), (h), (i); *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018).

### REYNA'S MOTION FOR RECONSIDERATION

Reyna also contends the trial court erred by denying his motion for reconsideration because M&J and EBG's deemed admissions established their liability. Those admissions were: (1) the negligence of M&J and EBG is the proximate cause of the crash; and (2) M&J and EBG are liable for the crash and his injuries.

We review a trial court's ruling on a motion for reconsideration for an abuse of discretion. *See, e.g.*, *Foussadier v. Triple B Servs., LLP*, No. 01-18-00106-CV, 2019 WL 2127604, at *3 (Tex. App.—Houston [1st Dist.] May 16, 2019, pet. denied) (mem. op.). "A trial court has wide

---

[12] Reyna further argues the evidence also shows M&J, EBG, Riojas, and Garza's Speed were "operating as a joint enterprise." He cites as support his expert's testimony and a definition of joint enterprise: "if the persons concerned have an agreement, either express or implied, with respect to the enterprise or endeavor and a common purpose and a community of pecuniary interest in the common purpose of the enterprise among the members." But Reyna cites no case law supporting the idea that engaging in a joint enterprise such as this, alone, gives rise to vicarious liability. *See* TEX. R. APP. P. 38.1(i).

discretion in granting or denying a motion for reconsideration." *RSM Prod. Corp. v. Glob. Petroleum Group, Ltd.*, No. 01-19-00474-CV, 2021 WL 2654134, at *4 (Tex. App.—Houston [1st Dist.] June 29, 2021, no pet.) (mem. op.) (citing *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

If a trial court has granted a summary judgment motion, it "generally has no obligation to consider further motions on the issues adjudicated by the summary judgment." *Casas v. Castano Enterprises, LLC*, No. 01-20-00326-CV, 2024 WL 234417, at *9 (Tex. App.—Houston [1st Dist.] Jan. 23, 2024, pet. denied) (mem. op.). If "a party files a motion for reconsideration or new trial after a summary judgment motion has been heard and ruled upon, the trial court may ordinarily consider only the record as it existed when it first heard the motion." *Id.* "However, a trial court may consider evidence submitted with a motion to reconsider provided that the court 'affirmatively indicates' in the record that it accepted or considered the later-filed evidence." *Id.* (quoting *Circle X Land & Cattle Co., Ltd. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)). This makes sense in light of the fact that "a party is generally not entitled to rely on new evidence in a motion for . . . reconsideration . . . without showing that the evidence was newly discovered and could not have been discovered by the exercise of due diligence before the court ruled on the [challenged] motion." *Casas*, 2024 WL 234417, at *6.

Here, the trial court did not affirmatively indicate in the record that it accepted or considered Reyna's later-filed evidence attached to the motion. *See Foussadier*, 2019 WL 2127604, at *4 (providing courts of appeals have found that late filed summary judgment evidence was not considered by trial court when, as here, order denying motion for reconsideration recited that court considered motions, pleadings, responses, and papers on file but did not expressly state

court considered late filed evidence). We therefore must conclude the trial court did not consider it. Accordingly, because the deemed admissions were the only basis of the motion and order, we cannot conclude the trial court abused its discretion by denying the motion for reconsideration.

But even if the trial court considered the deemed admissions, the evidence would be improper as they are merits preclusive. The Supreme Court has explained "requests for admissions are useful in 'addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents.'" *Medina v. Zuniga*, 593 S.W.3d 238, 244 (Tex. 2019) (quoting *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005)). They "were 'never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense.'" *Id.* (quoting *Sanders v. Harder*, 227 S.W.2d 206, 208 (1950)). Merits preclusive deemed admissions may only be used as a discovery sanction for flagrant bad faith or callous disregard for the rules. *See, e.g.*, *S. Tex. Innovations, LLC v. Rise Residential Constr., LP*, No. 02-18-00021-CV, 2018 WL 6844135, at *4 (Tex. App.—Fort Worth Dec. 31, 2018, pet. denied) (mem. op.). *See generally Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011).

## CONCLUSION

Based on the foregoing, we affirm summary judgment on all claims asserted by Reyna against M&J and EBG.

Lori Massey Brissette, Justice